## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

DANIEL ZACHARY JOHNSON,      )
)  Civil Action No.: 1:17-cv-00077
)
          Plaintiff,   )
   v.         )
)
)
FAXONME, LLC DBA RENTER RESUME, )
)
and            )
)
TAZWORKS, LLC, d/b/a TRADE HOUSE )
DATA,          )
         Defendants.  )
)

## AMENDED COMPLAINT

The Plaintiff, Daniel Zachary Johnson ("Mr. Johnson"), pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure,[1] hereby files this Amended Complaint and states as follows:

### INTRODUCTION

1.    This is an action for actual, statutory and punitive damages, costs and attorney's fees brought against the Defendants pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act or "FCRA"). Recognizing that employers, lenders, and landlords use consumer reports to deny people jobs, credit, and housing, Congress enacted the Fair Credit Reporting Act to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). To

---

[1] Plaintiff served Defendant FAXONME, LLC on Saturday, March 4, 2017. (*See* Dkt. 5). Accordingly, Plaintiff files this Amended Complaint as a matter of right pursuant to Rule 15(a)(1) because the 21-day deadline expires on March 27, 2017 because the time period is extended "until the next day that is not a Saturday, Sunday or legal holiday." *See* Fed. R. Civ. Proc. 6(a)(2)(C). Plaintiff attaches hereto a redlined version of the original complaint, as well as a summons for Defendant Taz Works, LLC, d/b/a Trade House Data.

accomplish these ends, one of the core provisions of the FCRA requires consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" whenever a consumer report is prepared concerning an individual. 15 U.S.C. § 1681e(b).

2.     Defendant TazWorks, LLC, d/b/a Trade House Data ("Trade House Data") is a company that compiles public records regarding individuals on a nationwide basis. It maintains an extensive database of public records regarding consumers. It then sells information from its database to other consumer reporting agencies, like Defendant FAXONME, LLC, d/b/a Renter Resume ("Renter Resume"), who merges the information it receives from Trade House Data with other data complied and maintained from a variety of sources. Renter Resume then sells and furnishes consumer reports to management companies and landlords who use the reports to make decisions whether or not to provide housing to prospective tenants.

3.     Rather than complying with the FCRA, Trade House Data maintains an untenable legal position that it is not a consumer reporting agency. Because of its position, Trade House Data *admittedly* maintains no policies or procedures to assure that it accurately assembles and provides consumer reports in compliance with the FCRA. Pursuant to this common practice, Trade House Data provided Renter Resume with a grossly inaccurate consumer report regarding Plaintiff, which contained multiple felony convictions, including rape and sexual assault convictions. Even though Plaintiff did not share the same middle name, date of birth, or social security number as the convicted felons, Defendant nonetheless attributed these criminal records to Plaintiff because his first and last name matched the convicted felons. Defendants' overly broad matching procedures violate § 1681e(b) of the FCRA.

4.     Because Trade House Data admittedly maintains no procedures to assure that it

2

accurately assembles and provides consumer reports in compliance with the FCRA, Plaintiff alleges a § 1681e(b) class claim against Trade House Data on behalf of himself and all similarly situated individuals who were the subject of an inaccurate consumer report furnished by Trade House Data.

5.    Plaintiff also alleges a claim under 15 U.S.C. § 1681g because Defendants selectively decides which information to provide to consumers that request copies of their consumer reports from Defendants. Section 1681g requires consumer reporting agencies to "clearly and accurately disclose" to consumers "all of the information" the consumer's file at the time of the request. Defendants refused to provide Plaintiff with a copy of his file and, thus, deprived Plaintiffs of valuable congressionally mandated information, which made it more difficult for Plaintiffs to correct and prevent further dissemination of errors relating to the derogatory criminal public records erroneously attributed to him.

6.    Defendant, FAXONME, LLC d/b/a "Renter Resume" and is a consumer-reporting agency that compiles and maintains files on consumers on a nationwide basis. It then sells and furnishes consumer reports to management companies and landlords who use the reports to make decisions whether or not to provide housing to prospective tenants.

## JURISDICTION

7.    The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) and Local Rule 501(b)(ii) because the only Maryland defendant resides in this Division.

## PARTIES

8.    Mr. Johnson is a natural person and a "consumer" as protected and governed by the

FCRA.

9.   Defendant FAXONME, LLC, d/b/a Renter Resume ("Renter Resume") is a Maryland limited liability company who sells prospective tenant screening services to landlords. Renter Resume a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

10.   Defendant TazWorks, LLC d/b/a Trade House Data ("Trade House Data") is a Utah limited liability company that sells tenant background check on a wholesale basis, including in the State of Maryland. Although it contends otherwise, Defendant satisfies each of the definitional requirements of a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). It is regularly engaged in the business of assembling, filtering and disbursing information concerning consumers for monetary fees and dues. Defendant provides this information to landlords, property managers and other consumer reporting agencies who use the Defendant's reports to make important decisions regarding prospective tenants.

### FACTUAL ALLEGATIONS

11.   In April, 2015, Mr. Johnson and his wife engaged a real estate agent to locate a house for them in the Baltimore area. Mr. Johnson had obtained new employment working with children in the Baltimore area and needed to secure housing by April 30, 2015. Additionally, Mr. Johnson's wife was eight month's pregnant

12.   Their agent located a potential house at 5302 Barbara Avenue, Baltimore, Maryland 21206.

13.   On April 7, 2015, Plaintiff provided an application to the property manager, Karen

4

Stevenson, with Keller Williams Excellence ("the Property Manager").

14.   On or about April 13, 2015, the Property Manager directed Mr. Johnson and his wife to complete an application on www.RenterResume.com–a tenant screening portal owned and operated by Renter Resume—in connection with the application.

15.   As part of this process, Rental Resume requested a consumer report regarding Plaintiff from Trade House Data.

16.   On April 13, 2015, Trade House Data prepared an "InstaCriminal" consumer report regarding Plaintiff and furnished the report to Renter Resume for a fee.

17.   Trade House Data describes its InstaCriminal report as:

> This database is compiled from county courthouses, Department of Corrections (DOC), and Administration of the Court (AOC), and is bundled with our Global Security Watch List and Sex Offender Records database sources. This search is an effective tool for discovering additional jurisdictions where criminal offenses may have occurred outside of an applicant's indicated residential and employment address history. This criminal database can be searched using our InstaCriminal™ National Search, or refining the scope down to the InstaCriminal™ Single State Search. The label "National" may be a misleading description for an otherwise very powerful background check tool when used correctly.

http://tradehousedata.com/services/ (last visited March 27, 2017).

18.   The "InstaCriminal" consumer report sold by Trade House Data contained inaccurate and derogatory information relating to Plaintiff, including the following information:

- Plaintiff is on the Wisconsin, Washington and Oregon Sex Offender Registries;
- Plaintiff was convicted of rape;
- Plaintiff was convicted of sexual assault; and
- Plaintiff has a "Me Against the World" tattoo on his arm.

19.   In turn, Renter Resume assembled and merged the inaccurate information received from Trade House Data's "InstaCriminal" report with other information from other sources, including at least one credit bureau and provided a consumer report to Plaintiff's Property

Manager.

20.  All of the criminal information contained in the consumer reports were false, grossly inaccurate, and derogatory.

21.  On April 14, 2015, Plaintiff and his wife were incredibly embarrassed and were forced to explain to their new landlord that Plaintiff is not a sex offender and would be a responsible tenant.

22.  The existence of this report was also very stressful to Plaintiff because it put his family's housing at risk while his wife was eight months pregnant, and because he moved to Maryland to pursue an employment opportunity working with children and was concerned that Defendants may spread this false and defamatory information to his new employer or parents of the children he coached.

23.  Upon information and belief, this inaccurate reporting was caused by Defendants' failure to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the consumer reports it published and maintained regarding Plaintiff.

24.  If Defendants had reasonable procedures (or any procedures whatsoever), it could have easily determined that the information in Plaintiff's consumer report belonged to another person with a similar name. For example, Plaintiff did not share the same name, social security number or date of birth as the "Daniel Lee Johnson" or "Daniel John Lee Johnson" listed on two records, or the same birthday or physical characteristics of the "Daniel Johnson" listed on the Wisconsin Sex Offender Registry—who was still incarcerated in April 2015 according to the report furnished by Defendant.

25.  After Plaintiff learned about the inaccurate and derogatory report, Plaintiff mailed a

letter to Trade House Data on or around August 1, 2016, which requested a complete copy of his credit file.

26.   On September 1, 2016, Trade House Data responded to Plaintiff's letter and indicated that it "is not a consumer reporting agency and does not maintain any files about you."

27.   Plaintiff also mailed a letter to Renter Resume on October 10, 2015, which requested a complete copy of his credit file.

28.   Renter Resume never responded to Mr. Johnson's letter.

29.   Plaintiff sent a second letter on November 24, 2015, requesting a complete copy of his credit file.

30.   Again, Renter Resume never responded.

## TRADE HOUSE DATA'S ILLEGAL BUSINESS PRACTICES

31.   Trade House Data is a consumer reporting agency because it "for monetary fees… regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties…." 15. U.S.C. § 1681a(f).

32.   Trade House does not merely collect public record information, but rather, it assembles, filters, and formats the information as part of the services that it provides to its customers and other consumer reporting agencies.

33.   In an advisory opinion issued seventeen years ago, the Federal Trade Commission ("FTC") concluded that entities providing these types of services are consumer reporting agencies within the definition set forth in the FCRA. FTC Advisory Opinion to LeBlanc, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leblanc-06-09-98.

The opinion states:

> From your description of its activities, it appears that, at the very least, your company "assembles" information as this term is common understood (dictionary definitions include "to gather" or "to collect"). Your company's record searchers go to local courthouses and review the records to find information. If they find information on an individual, they forward either a brief abstract or copies of the docket information. At your headquarters, a report is prepared consisting of all the information reported by your agents from around the country. We believe that the activities you describe are sufficient to meet the definitional requirement of a CRA.

> *Id.*

34. Trade House Data engages in a far more extensive collection and assembly process than the process described in the LeBlanc Opinion letter.

35. Trade House's reports also meet the definition of a consumer report under the FCRA, which "is considered to have three fundamental elements." *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 325 (E.D. Va. 2016) (Payne, J.).

36. Trade House Data's report satisfies the definitional elements of a consumer report because its reports are: (1) communications by a consumer reporting agency; (2) containing information bearing on consumer's "character, general reputation, [and] personal characteristics." 15 U.S.C. § 1681a(d).

37. Additionally, as reflected by Plaintiff's having to explain to his landlord that he was not a sex offender in his search for housing, the Trade House Data's reports satisfy the third element of the definition, which requires that the "information communicated must be 'used or expect to be used or collected in whole or in part" for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance, housing or employment.

38. Companies, like Renter Resume, use Trade House Data's reports for the purpose of

establishing consumers' eligibility for housing.

39. Additionally, the public records information is "collected in whole or in part" by Trade House Data for the purpose of establishing consumers' eligibility for housing.

40. As a consumer-reporting agency, Trade House Data is required to comply with all provisions of the FCRA. Nevertheless, Trade House Data admittedly maintains procedures to ensure that it accurately assembles and provides consumer reports in compliance with the FCRA.

## FACTUAL ALLEGATIONS REGARDING WILLFULNESS

41. If Defendants had reasonable procedures to assure maximum possible accuracy, they could have determined that the information they furnished regarding Plaintiff belonged to other people with similar names. Defendants' failure to adopt reasonable procedures to assure maximum possible accuracy was both knowing and reckless.

42. Defendants' failure to ensure that the consumer's name on the report matches the name on the underlying public records is knowing. Defendants made an intentional choice to prepare its reports in an over-inclusive fashion, reporting partial name matches as exact matches, while at the same time matching reports to consumers where the date of births did not match.

43. Upon information and belief, through customer and consumer complaints, Defendants have received substantial notice establishing the inadequacies of its procedures.

44. Defendants could have had a policy in place of only reporting criminal records when the name and date of birth of the consumer matches the criminal record.

45. As part of the process of assembling consumer reports, Defendants utilize a variety of algorithms and filters to aggregate information from a variety of sources.

46. It is standard practice for consumer reporting agencies to write filters and algorithms

to filter out inaccurate information.

47.  Defendants, consistent with standard industry practices, could have written an algorithm or filter to ensure that all of its reports would exclude records that did not have an exact name match or an exact date of birth match.

48.  Defendants failed to implement these algorithms despite the fact that they easily could have done so and that these types of algorithms are standard in the credit reporting industry.

49.  However, Defendants place their business interests above the rights of consumers and unlawfully reports such information because it is cheaper for Defendants to produce reports containing information that is not lawfully reportable than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

50.  Defendants unlawfully report such information because: (1) they want to maximize the automation of their report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the unlawfully reported entries; (2) Defendants believe that their customers would prefer a "false positive" over a "false negative"; and (3) the practice of unlawfully reporting such information allows Defendants to produce voluminous reports, which creates the impression to its customers that the reports contain more information.

51.  Defendants were also aware of its obligations under § 1681g, because Plaintiff outlined those obligations in detail in the letter he sent requesting his file.

52.  Rather than responding to Plaintiff's request, Trade House Data instead made knowingly false representations about its status as a consumer reporting agency. Defendant did

so in an effort to avoid being held liable for reporting inaccurate and illegal information.

53.    Likewise, Renter Resume ignored Plaintiff's letters in an effort to avoid being held liable for reporting inaccurate and illegal information.

54.    Defendants refusal to respond to Plaintiff's file request demonstrates that Defendants knowingly violated 15 U.S.C. § 1681g.

55.    Defendant's practices violate a fundamental protection afforded to consumers under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance.

**COUNT ONE:**
**15 U.S.C. § 1681e(b)**
**(INDIVIDUAL CLAIM AGAINST RENTER RESUME)**

56.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

57.    As detailed above, Renter Resume violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished regarding Plaintiff.

58.    As a result of Renter Resume's conduct, Plaintiff suffered actual damages including but not limited to: worry about providing a home for Plaintiff and his family, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

59.    Renter Resume's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, the Renter Resume was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

60.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive

damages, costs and attorneys' fees from Renter Resume in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT TWO:**
**Violation of 15 U.S.C. § 1681g**
**(CLASS CLAIM AGAINST RENTER RESUME)**

61.     Plaintiff incorporates each of the allegations in the preceding paragraphs as if set

forth at length herein.

62.     Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of

the Federal Rules of Civil Procedure, on behalf of the following class defined as follows:

> **The § 1681g Class**: All natural persons in the United States who requested a copy
> of their consumer report or consumer file. The Class includes all individuals
> whose request was made at any time dating from two years prior to the filing of
> this Complaint through the date of final judgment in this action

63.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Plaintiff

alleges that the § 1681g Class is so numerous that joinder of the claims of all class members is

impractical. The names and addresses of the class members are identifiable through documents

maintained by Renter Resume, and the class members may be notified of the pendency of this

action by published and/or mailed notice.

64.     **Existence and Predominance of Common Questions of Law and Fact. Fed. R.**

**Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the § 1681g Class.

These questions predominate over the questions affecting only individual members. These common

legal and factual questions include by example only and without limitation: (1) whether Renter

Resume is a consumer reporting agency; (2) whether Renter Resume violated § 1681g by refusing

to provide consumers with copies of their reports and files; and (3) what is the proper measure of

damages for Plaintiff and the class members.

12

65.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each member of the § 1681g Class. Plaintiff is entitled to relief under the same cause of action as the other members of the class. The procedures were the same for Plaintiff and each class member. The willfulness evidence is the same. And the time period within which all actions relevant to this class claim took place is the same.

66.     **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the class, because his interests coincide with and are not antagonistic to the interests of the members of the class he seeks to represent; Plaintiff has retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the interests of members of the class.

67.     **Superiority. Fed. R. Civ. P. 23(b)(3).** As alleged above, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Further, individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Renter Resume's conduct and the limited availability of legal representation for such prosecutions. It would be virtually impossible for the members of the class individually to redress effectively the wrongs done to them. Even if the members of the class themselves could afford such individual litigation; it would be an unnecessary burden courts across the country. In fact, it is also likely that a large number of class members may not even know of the underlying inaccuracy, not having yet discovered the uncorrected public record or otherwise reviewed their current credit report. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense

to all parties and to the court system presented by the complex legal and factual issues raised by Renter Resume's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

68.     As explained above, Renter Resume violated § 1681g by failing to provide consumers with copies of their files and reports in response to requests by consumers.

69.     Renter Resume's violation of 15 U.S.C. § 1681g was willful, rendering Renter Resume liable pursuant to 15 U.S.C. § 1681n.

70.     In the alternative, Renter Resume's violation of 15 U.S.C. § 1681g was negligent, rendering the Renter Resume liable pursuant to 15 U.S.C. § 1681n.

71.     As a result of Renter Resume's violations, Plaintiff and the class members suffered actual damages including informational injuries, reputational harm, and difficulties correcting inaccurate information in their reports.

72.     The Plaintiffs and each class member are entitled to recover statutory damages between $100 and $1,000, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

**COUNT THREE:**
**Violation of 15 U.S.C. § 1681e(b)**
**(CLASS CLAIM AGAINST TRADE HOUSE DATA)**

73.     Plaintiff incorporates each of the allegations in the preceding paragraphs as if set forth at length herein.

74.     Plaintiffs bring this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following classes defined as follows:

14

**Mismatched Name Class**: All natural persons in the United States who: (1) were subject of a consumer report furnished by Trade House Data to a third party; (2) where the consumer report contained at least one criminal record item; and (3) for which the name reported for the offense does not match the name associated with the record Trade House Data obtained from its source.

**Date of Birth Class**: All natural persons in the United States who: (1) were subject of a consumer report furnished by Trade House Data to a third party; (2) where the consumer report contained at least one criminal record item; and (3) for which the date of birth reported for the offense does not match the date of birth associated with the record Trade House Data obtained from its source.

75. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Plaintiffs allege that the Classes are so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Trade House Data, its customers, and/or through publically available court records, and the class members may be notified of the pendency of this action by published and/or mailed notice.

76. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting only individual members. These common legal and factual questions include by example only and without limitation: (1) whether Trade House Data is a consumer reporting agency; (2) whether Trade House Data's product is a consumer report; (3) whether Trade House Data adopted reasonable procedures to assure maximum possible accuracy; (4) whether Trade House Data's violation was knowing, intentional or in reckless disregard for the rights of the consumers; and (5) the proper measure of damages for Plaintiff and the class members.

77. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each member of the Classes. Plaintiffs are entitled to relief under the same cause of action as the other members of the Classes. Trade House Data's credit reporting procedures (or lack thereof) were the same. The willfulness evidence is the same. And the time period within which all actions relevant to this class claim took place is the same.

78. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the class, because his interests coincide with and are not antagonistic to the interests of the members of the class he seeks to represent; he has retained counsel competent and experienced in such litigation; and they will prosecuted this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the class.

79. **Superiority. Fed. R. Civ. P. 23(b)(3).** As alleged above, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Further, individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Trade House Data's conduct and the limited availability of legal representation for such prosecutions. It would be virtually impossible for the members of the class individually to redress effectively the wrongs done to them. And in fact, not a single putative class member has filed or attempted the class claim. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Court. In fact, it is also likely that a large number of class members may not even know of the underlying inaccuracy, not having yet discovered the uncorrected public record or otherwise reviewed their current credit report. Furthermore, individualized litigation presents a potential for

inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Experian's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

80.   As explained above, Trade House Data violated § 1681e(b) as to the Plaintiff and to the putative class members by failing to follow reasonable procedures to ensure the maximum possible accuracy when it published reports concerning Plaintiff and class members that inaccurately attributed criminal records to them.

81.   Plaintiff and the class members' credit reports were materially inaccurate and were the result of Trade House Data's failure to adopt any policies or procedures to ensure that it accurately assembles and provides consumer reports in compliance with the FCRA.

82.   Trade House Data's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.

83.   In the alternative, Trade House Data's violation of 15 U.S.C. § 1681e(b) was negligent, rendering it liable pursuant to 15 U.S.C. § 1681n.

84.   The Plaintiff and each class member are entitled to recover statutory damages between $100 and $1,000, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR:
### Violation of 15 U.S.C. § 1681g
### (CLASS CLAIM AGAINST TRADE HOUSE DATA)

85.   Plaintiff incorporates each of the allegations in the preceding paragraphs as if set

forth at length herein.

86.   Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class defined as follows:

> **The § 1681g Class**: All natural persons in the United States who requested a copy of their consumer report or consumer file. The Class includes all individuals whose request was made at any time dating from two years prior to the filing of this Complaint through the date of final judgment in this action

87.   **Numerosity. Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Plaintiff alleges that the § 1681g Class is so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Trade House Data, and the class members may be notified of the pendency of this action by published and/or mailed notice.

88.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the § 1681g Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include by example only and without limitation: (1) whether Trade House Data is a consumer reporting agency; (2) whether Trade House Data violated § 1681g by refusing to provide consumers with copies of their reports and files; and (3) what is the proper measure of damages for Plaintiff and the class members.

89.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each member of the § 1681g Class. Plaintiff is entitled to relief under the same cause of action as the other members of the class. The procedures were the same for Plaintiff and each class member. The willfulness evidence is the same. And the time period within which all actions relevant to this class claim took place is the same.

90. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the class, because his interests coincide with and are not antagonistic to the interests of the members of the class he seeks to represent; Plaintiff has retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the interests of members of the class.

91. **Superiority. Fed. R. Civ. P. 23(b)(3).** As alleged above, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Further, individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Trade House Data's conduct and the limited availability of legal representation for such prosecutions. It would be virtually impossible for the members of the class individually to redress effectively the wrongs done to them. Even if the members of the class themselves could afford such individual litigation; it would be an unnecessary burden courts across the country. In fact, it is also likely that a large number of class members may not even know of the underlying inaccuracy, not having yet discovered the uncorrected public record or otherwise reviewed their current credit report. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Trade House Data's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

92. As explained above, Trade House Data violated § 1681g by failing to provide

consumers with copies of their files and reports in response to requests by consumers.

93.   Trade House Data's violation of 15 U.S.C. § 1681g was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.

94.   In the alternative, Defendant's violation of 15 U.S.C. § 1681g was negligent, rendering it liable pursuant to 15 U.S.C. § 1681n.

95.   As a result of Defendant's violations, Plaintiff and the class members suffered actual damages including informational injuries, reputational harm, and difficulties correcting inaccurate information in their reports.

96.   The Plaintiff and each class member are entitled to recover statutory damages between $100 and $1,000, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff moves for judgment against the Defendants for himself and on behalf of the defined classes against the Defendants as alleged for statutory and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs and such other relief the Court does find just and appropriate. As for his individual claim, Plaintiff also moves for his actual and/or statutory damages, punitive damages, for equitable and injunctive relief; and for attorneys' fees and costs and such other relief the Court does find just and appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**DANIEL ZACHARY JOHNSON**

By:____/s/ Kristi C. Kelly_____
                    Counsel

Kristi Cahoon Kelly(No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com

Scott A. Surovell, Esq. (*to be admitted*)
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, VA 22030
Telephone: 703.277.9750
Facsimile: 703.591.9285
Email: ssurovell@siplfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __27th__ day of March, 2017, I caused to be served, by

first class mail and electronic mail to:

Adam Meehan
Smith & Downey, P.A.
320 E. Towsontown Blvd, Suite 1E
Baltimore, Maryland 21286
410-321-9000
Email: ameehan@smithdowney.com
Counsel for Defendant FAXONME, LLC,
d/b/a Renter Resume

/s/ *Kristi C. Kelly*
Kristi C. Kelly